**McGuireWoods LLP**
ROBERT MUCKENFUSS (*pro hac vice forthcoming)*
(NC State Bar No. 28218)
rmuckenfuss@mcguirewoods.com
HANNAH CAISON *(admitted pro hac vice)*
(NC State Bar No. 59260)
hcaison@mcguirewoods.com
201 N. Tryon Street, Suite 3000
Charlotte, NC 28202

ELIZABETH ZWICKERT TIMMERMANS *(admitted pro hac vice)*
(NC State Bar No. 40205)
eztimmermans@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
Facsimile: (919) 755-6699

PIPER A. MCCORMICK
(State Bar No. 291482)
pmccormick@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210
*Attorneys for Defendant*
*Bank of America, N.A.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

BULLION STANDARD, INC., a California corporation

Plaintiffs,

vs.

BANK OF AMERICA, N.A.; and DOES 1 through 25,

Defendants.

CASE NO. 3:25-CV-01299-W-SBC

**DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**Date:** July 28, 2025
**Judge:** Hon. Thomas J. Whelan

NO ORAL ARGUMENT PER LOCAL RULE

//

//

## TABLE OF CONTENTS


Page

INTRODUCTION ........................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 1

LEGAL STANDARD ........................................................ 4

ARGUMENT ........................................................ 4

I. Plaintiff's conversion claim fails because California law precludes a conversion claim for funds deposited with a bank. ............ 4

II. Plaintiff's interference claims fail because Plaintiff has not sufficiently alleged that BANA knew of the alleged contract or prospective economic relations. ............ 6

III. Plaintiff's intentional interference claims fail because Plaintiff has not sufficiently alleged that BANA desired to interfere with its alleged contract or economic relationships or that such interference was substantially certain to occur. ............ 9

IV. Plaintiff's claim for declaratory relief is duplicative of its other claims and merely seeks to redress past harms. ............ 10

CONCLUSION ........................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................. 7

*Baldwin v. Marina City Props., Inc.*,
79 Cal. App. 3d 393 (1978) .................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................. 4

*Burlesci v. Petersen*,
68 Cal. App. 4th 1062 (1998) .................................................. 4

*Chavez v. Bank of Am. Corp.*,
No. C-10-0653 JCS, 2012 WL 1594272 (N.D. Cal. May 4, 2012) .................................................. 4

*Crocker–Citizens Nat'l Bank v. Control Metals Corp.*,
566 F.2d 631 (9th Cir.1977) .................................................. 5

*Damabeh v. 7-Eleven, Inc.*,
2013 WL 1915867 (N.D. Cal. May 8, 2013) .................................................. 8

*Gutierrez v. Wells Fargo Bank N.A.*,
622 F. Supp. 2d 946 (N.D. Cal. 2009) .................................................. 5

*Kenney v. Bank of Am., N.A.*,
No. 2:25-CV-02726-MWC-PVC, 2025 WL 1489549 (C.D. Cal. May 23, 2025) .................................................. 4

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1132 (2003) .................................................. 7, 9

*Lee v. Bank of America*,
218 Cal. App. 3d 914 (1990) .................................................. 5

*Mossimo Holdings, LLC v. Haralambus*,
No. CV 14-05912 DDP (JE), 2017 WL 1240739 (C.D. Cal. Apr. 4, 2017) .................................................. 6, 7

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 4

*Nunez v. Ramirez*,
No. 09-CV-413-WQH BGS, 2011 WL 7096611 (S.D. Cal. Nov. 14, 2011) ........ 4

*Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*,
471 F. Supp. 2d 1035 (N.D. Cal. 2007) ........ 11

*Quelimane Co. v. Steward Title Guaranty Co.*,
19 Cal. 4th 26 (1998) ........ 6

*R Power Biofuels, LLC v. Chemex LLC*,
No. 16-CV-00716-LHK, 2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ........ 8

*Randy Horn D.D.S., Inc. v. High Point Servs., Inc.*,
No. EDCV1201604VAPDTBX, 2013 WL 12114065 (C.D. Cal. Nov. 19, 2013) ........ 5, 6

*Schertzer v. Bank of Am., N.A.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) ........ 5, 6

*Vega v. JPMorgan Chase Bank, N.A.*,
654 F. Supp. 2d 1104 (E.D. Cal. 2009) ........ 4

*Venhaus v. Shultz*,
155 Cal. App. 4th 1072 (2007) ........ 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Bullion Standard, Inc. ("Plaintiff") is an online precious metals retailer that previously maintained an account with BANA. BANA closed the account after determining that Plaintiff had been the recipient of fraudulent transfers and, in connection with the fraud determination and account closure, froze the funds in the account. Plaintiff then brought this action, alleging that BANA improperly closed the account and that such improper closure caused Plaintiff to miss out on business opportunities with both current and potential customers.

Even taking Plaintiff's allegations as true, its claims fail. First, Plaintiff asserts a claim for conversion of the funds in its account that were frozen when the account was closed, but California law is clear that a conversion claim cannot be maintained against a bank, which retains title to the funds deposited in it. Next, Plaintiff's claims for intentional interference with contract, intentional interference with prospective economic relations, and negligent interference with prospective economic relations all fail because an essential element of those claims is that the defendant knew about the contract or prospective economic opportunity. Here, the complaint is devoid of any allegations that would support even the most generous inference that BANA knew about Plaintiff's current or potential contracts. Moreover, Plaintiff cannot establish the requisite intent element for its intentional tort claims. Finally, Plaintiff's claim for declaratory relief is merely an attempt to repackage its arguments that BANA improperly closed its account. Because resolution of Plaintiff's complaint will resolve that issue, the declaratory relief claim is duplicative and should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an online precious metals retailer. ECF 1-2, Complaint ¶ 5 ("Compl."). BANA is a national banking association. *Id.* ¶ 2. In January 2024, Plaintiff opened a direct deposit account with BANA and ran its business through the account over the next year. *Id.* ¶¶ 22–23.

Between January 8, 2025, and February 13, 2025, Plaintiff alleges that it entered into a series of transactions with an unidentified customer referred to only as "Customer 1" in the complaint, totaling approximately $380,000 in purchases of product. *Id.* ¶ 25. In connection with each purchase, Customer 1 wired funds to Plaintiff's BANA account. *Id.* Plaintiff then transferred funds to its wholesaler, who it directed to fulfill the orders. *Id.* Plaintiff alleges that although its wholesaler delivered all products Customer 1 ordered to them by February 17, 2025, Customer 1 subsequently "gave their product" to an unknown third party. *Id.* ¶¶ 25–26. The complaint alleges that the unknown third party obtained the product under false pretenses and that Customer 1 was a victim of the third party's fraud. *Id.* ¶ 26.

Customer 1 went to their local BANA branch and reported that the product they ordered from Plaintiff had been stolen. *Id.* ¶ 27. BANA opened a fraud dispute based on Customer 1's report and debited Plaintiff's account $381,000. *Id.* ¶ 28. After Plaintiff provided BANA evidence that the wire transfers from Customer 1 had been connected to a business transaction and Customer 1 called BANA to clarify that Plaintiff was not the party that defrauded them, BANA closed the fraud investigation and released the $381,000. ¶¶ 36, 39, 41–42.

On February 27, 2025, Plaintiff alleges that it entered into a transaction with an unidentified customer referred to only as "Customer 2" in the complaint. *Id.* ¶ 29. Customer 2 purchased approximately $75,000 in product from Plaintiff, which it wired to Plaintiff's BANA account. *Id.* Plaintiff then transferred funds to its wholesaler and directed the wholesaler to fulfill Customer 2's order, which it did by March 6, 2025. *Id.* As with Customer 1, Customer 2 also allegedly gave the product it purchased to an unknown third party. *Id.* ¶ 30. As with Customer 1, the complaint alleges that Customer 2 was a victim of the third party's fraud. *Id.*

Customer 2 reported to their local bank that the product they ordered from Plaintiff had been stolen, and BANA again opened a fraud dispute and debited Plaintiff's account $75,000. *Id.* ¶ 32. After Plaintiff provided BANA evidence that the

wire transfer from Customer 2 had been connected to a business transaction and Customer 2 called their bank to clarify that Plaintiff was not the party that defrauded them, BANA closed the claim and credited Plaintiff's account. *Id.* ¶ 36, 43–44.

On March 27, 2025, Plaintiff alleges that it entered into a transaction with an unidentified customer referred to only as "Customer 3" in the complaint. *Id.* ¶ 50. Customer 3 purchased "approximately $50,000" of product from Plaintiff and wired funds to Plaintiff's BANA account. *Id.* Plaintiff alleges that when it accessed its account after the funds were transferred, it "learned" that BANA had frozen its account and Plaintiff could no longer access the funds therein. *Id.* ¶ 51. When Plaintiff contacted BANA regarding the freeze, BANA informed Plaintiff that the wire transfer was marked as "potentially fraudulent" and that BANA had determined that transfers associated with Customers 1 and 2 had been fraudulent and, accordingly, BANA had closed Plaintiff's account. *Id.* ¶ 55. Plaintiff alleges that the freeze and closure made it unable to fulfill Customer 3's order. *Id.* ¶ 81.

Plaintiff alleges that shortly after it learned its BANA account had been closed, the "biggest trading day in history" for precious metals dealers occurred. *Id.* ¶¶ 58–61. Specifically, on April 4, 2025, President Trump announced that the United States would be imposing a series of tariffs, leading to the prices of gold and silver to crater and to a high volume of precious metals purchases. *Id.* Plaintiff alleges that because its BANA account had been closed, it was unable to participate in any precious metals transactions on that day and is still working to establish an account with a new bank. *Id.* ¶¶ 61, 63.

As a result, Plaintiff brought suit against BANA in California state court on April 11, 2025. *Id.* Plaintiff brought claims seeking a declaration that it did not commit fraud against Customer 1 and Customer 2 (Count 1); for conversion of the approximately $50,000 Customer 3 transferred into its account (Count 2); for intentional interference with contractual relationships based on BANA's alleged interference with Customer 3's order (Count 3); and for intentional and negligent

interference with prospective economic relations based on future losses of business resulting from BANA's alleged conduct (Counts 4, 5). BANA removed the action to this Court on May 21, 2025, based on diversity jurisdiction. ECF 1.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss should be granted if a plaintiff's complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, the Court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences." *Nunez v. Ramirez*, No. 09-CV-413-WQH BGS, 2011 WL 7096611, at *2 (S.D. Cal. Nov. 14, 2011), *report and recommendation adopted*, No. 09CV413 WQH BGS, 2012 WL 243262 (S.D. Cal. Jan. 24, 2012) (citation omitted).

## ARGUMENT

### I. Plaintiff's conversion claim fails because California law precludes a conversion claim for funds deposited with a bank.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1121 (E.D. Cal. 2009) (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1065 (1998)). "California law is well-settled in this area that a claim against the bank for conversion will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor has no conversion claim against a bank under California law." *Kenney v. Bank of Am., N.A.*, No. 2:25-CV-02726-MWC-PVC, 2025 WL 1489549, at *7 (C.D. Cal. May 23, 2025) (quoting *Chavez v. Bank of Am. Corp.*, No. C-10-0653 JCS, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012));

*see also Gutierrez v. Wells Fargo Bank N.A.,* 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) ("A bank may not be sued for conversion of funds deposited with the bank."); *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1093 (S.D. Cal. 2020) ("Plaintiffs' conversion claims fail. Any money became the literal property of BofA upon deposit in the bank and not subject to a claim of conversion."); *Crocker–Citizens Nat'l Bank v. Control Metals Corp.*, 566 F.2d 631, 637 (9th Cir.1977), *abrogated on other grounds by Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1566 (9th Cir. 1990) ("It is a well-settled principle of California law that the relationship between a bank and its depositor is one of debtor and creditor. Therefore, when funds are deposited, title to those funds passes immediately to the bank. Since the money thus becomes the literal property of the bank, it cannot be tortiously converted by the bank." (citations omitted)); *Lee v. Bank of America*, 218 Cal. App. 3d 914, 919 (1990) ("Title to the deposited funds passes immediately to the bank which may use the funds for its own business purposes. The bank does not thereby act as trustee and cannot be charged with converting the deposit to its own use." (quoting *Morse v. Crocker Nat'l Bank*, 142 Cal. App. 3d 28, 232 (1983))).

Moreover, "[w]hen funds are deposited in a bank account, the depositor is no longer entitled to any specific assets in his bank and thus the amount deposited is not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank." *Randy Horn D.D.S., Inc. v. High Point Servs., Inc.*, No. EDCV1201604VAPDTBX, 2013 WL 12114065, at *7 (C.D. Cal. Nov. 19, 2013).

Accordingly, Plaintiff cannot sustain a claim for conversion against BANA. Here, Plaintiff alleges that BANA is withholding certain funds deposited in its BANA account. But the funds in Plaintiff's account were the "literal property of [BANA]" and therefore BANA cannot have converted them to its own use. *Schertzer*, 445 F. Supp. 3d at 1093; *Crocker–Citizens Nat'l Bank*, 566 F.2d at 637. And, even if BANA could have converted the funds, the property that Plaintiff claims was converted is not

sufficiently identifiable. While Plaintiff alleges that Customer 3 wired "approximately" $50,000 to Plaintiff, it made the transfer into Plaintiff's BANA account where it could then be comingled with other funds. And when BANA froze Plaintiff's account it did not specifically seize the "approximately" $50,000 from Customer 3; instead, it froze all of the funds in Plaintiff's account. Thus, the property that is the subject of Plaintiff's conversion claim is not sufficiently identifiable to sustain such a claim.

Ultimately, "[a]ny injuries or losses the Plaintiff[] ha[s] allegedly suffered are a result of [its] pre-existing contractual agreement with BofA, the bank into which [it] deposited [its] funds." *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d at 1093. In other words, to the extent Plaintiff wishes to assert a claim that BANA took wrongful action with respect to the funds in its account at the time it was frozen, any remedy must be found in contract, not in tort. *Randy Horn D.D.S., Inc. v. High Point Servs., Inc.*, 2013 WL 12114065, at *7. Plaintiff has not done so,[1] and Plaintiff's conversion claim should be dismissed.

**II. Plaintiff's interference claims fail because Plaintiff has not sufficiently alleged that BANA knew of the alleged contract or prospective economic relations.**

To state a claim for intentional interference with contractual relations, a Plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption and (5) resulting damage." *Mossimo Holdings, LLC v. Haralambus*, No. CV 14-05912 DDP (JE), 2017 WL 1240739, at *5 (C.D. Cal. Apr. 4, 2017) (quoting *Quelimane Co. v. Steward Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998)). The

[1] Plaintiff's failure to assert such a claim is telling, as it is an implicit admission that the agreement it entered into in opening the account allows BANA to freeze funds when it identifies a potentially fraudulent transaction.

elements for a claim for intentional interference with prospective economic relations are similar, requiring that plaintiffs show: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Id.* at *6 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1132 (2003)). And the elements of a claim for negligent interference with prospective economic relations are similar as well, with the only difference being the requisite mental state. *See Venhaus v. Shultz*, 155 Cal. App. 4th 1072, 1078 (2007) (describing the same elements as an intentional interference claim aside from requiring that the plaintiff show that "the defendant was negligent" rather than showing intentional acts).

Accordingly, all three torts require that BANA knew of Plaintiff's relationship with a specific third party. In the case of the intentional interference with contract claim, Plaintiff must establish that BANA knew of Plaintiff's contract with Customer 3. And for the interference with prospective economic relations claims, Plaintiff must not only establish the existence of some particular third party with whom it was probable Plaintiff would have a favorable economic relationship but must also show that BANA knew of that relationship. Plaintiff has not done so.

First, as to the contract with Customer 3, Plaintiff has included no details in the complaint from which it can be inferred that BANA had any knowledge of Plaintiff's specific contractual relationship with Customer 3. Instead, the complaint includes only the conclusory allegation that "Defendant knew of Plaintiff's contract with Customer 3 by virtue of the facts alleged above," without identifying any specific facts. Compl. ¶ 78. The Court should disregard this conclusory allegation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor do

any of the "facts alleged above" provide any basis on which to infer that BANA knew either of Customer 3's existence or of any contract that Plaintiff had with them. Indeed, the crux of Plaintiff's allegations is that BANA was misidentifying wires associated with legitimate business transactions as fraudulent. The logical inference to draw from such allegations is that BANA did *not* know who Plaintiff's current customers were and was unable to recognize that wires from such customers were legitimate. Accordingly, Plaintiff's claim for intentional interference with contract fails.

As to the interference with prospective economic relations claims, Plaintiff attempts to meet the knowledge requirement by pleading that BANA had some vague idea that it was a precious metals retailer using its BANA account to conduct its business. Even accepting that as true, "in the context of claims for negligent and tortious interference with prospective economic advantage, 'it is essential that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a *particular individual*.'" *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716-LHK, 2016 WL 6663002, at *16 (N.D. Cal. Nov. 11, 2016) (quoting *Damabeh v. 7-Eleven, Inc.*, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013)) (emphasis added). And, as the court observed in *Chemex*, simply alleging a relationship with "major consumers of biodiesel" without providing any details about "'specific' companies" is insufficient to identify a particular individual. *Id.* at *17.

Here, Plaintiff cannot show that BANA knew of a prospective relationship with any particular individual—indeed, no particular individual is even named in the complaint. Instead, Plaintiff, like the plaintiff in *Chemex*, merely alleges vaguely that it has a "customer base" with whom it expected to do business. Compl. ¶¶ 85, 97. Even accepting as true Plaintiff's allegation that BANA had some vague idea about the nature of Plaintiff's business, Plaintiff has not identified, much less sufficiently alleged that BANA knew of, any particular individual with whom Plaintiff expected to have an advantageous economic relationship.

Moreover, Plaintiff's claims for interference with prospective economic relations are almost entirely premised on Plaintiff's allegations that it missed out on significant trading on April 4, 2025. But to successfully bring a claim based on such allegations, Plaintiff would need to show not only that BANA knew of the existence of some hypothetical third party but that it knew of the "probability of future economic benefit" from that third party related to the events of April 4, 2025. Plaintiff does not, nor could it, allege that BANA had any knowledge of President Trump's future pronouncement of tariffs. Nor does Plaintiff allege that BANA would have had any knowledge that such pronouncement would lead to significant trading opportunities. Thus, while Plaintiff now alleges that because of a chain of events that included the freezing of its account that it missed out on profits, it cannot show that BANA had any inclination that its acts would lead to such losses because BANA did not have any idea about a "probability of future economic benefit" on April 4.

Accordingly, Plaintiff's claims for intentional interference with contract and intentional and negligent interference with prospective economic relations should be dismissed.

### III. Plaintiff's intentional interference claims fail because Plaintiff has not sufficiently alleged that BANA desired to interfere with its alleged contract or economic relationships or that such interference was substantially certain to occur.

To demonstrate that a defendant took "intentional acts designed" to interfere with a contract or economic relations, a Plaintiff can either show that "the defendant desired to interfere" or that "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Co.*, 29 Cal. 4th at 1154. At the outset, Plaintiff does not attempt to allege that BANA's desire in freezing its account was to interfere with any of its current or prospective contractual or economic relationships. Instead, the allegations in the complaint establish that Plaintiff's account was frozen because the wire from Customer 3 was marked as

potentially fraudulent and because BANA had determined that there had previously been fraudulent transactions associated with Plaintiff's account. Compl. ¶¶ 52, 55.

Accordingly, Plaintiff can only establish this element of its intentional tort claims if it can show that BANA knew that interference was "certain or substantially certain" to occur as the result of freezing Plaintiff's account. As to any interference with the contractual relationship with Customer 3, Plaintiff's own allegations demonstrate that BANA had no idea any interference with a legitimate business relationship would occur as a result of the freeze; instead, the very purpose of the freeze was to prevent an illegitimate transaction.

Nor can Plaintiff show that BANA knew it was certain or substantially certain that freezing and closing its account would interfere with its relationships with its unidentified customers. First, while much of Plaintiff's complaint focuses on its inability to participate in precious metals trading on April 4, 2025, there are no allegations in the complaint that BANA knew or even suspected that such date would be of significance to Plaintiff. Nor could BANA have known that taking action on Plaintiff's account to prevent what it identified as a fraudulent transaction would somehow affect hypothetical, legitimate business transactions. Accordingly, Plaintiff has not shown that BANA took any action against it with the intent to interfere with its contractual or economic relationships, and the claims should be dismissed for this reason as well.

## IV. Plaintiff's claim for declaratory relief is duplicative of its other claims and merely seeks to redress past harms.

Finally, Plaintiff seeks a declaration that it "did not commit fraud against Customer 1 and Customer 2." Compl. ¶ 68. But "[d]eclaratory relief operates prospectively, serving to set controversies at rest . . . there is no basis for declaratory relief where only past wrongs are involved." *Baldwin v. Marina City Props., Inc.*, 79 Cal. App. 3d 393, 407 (1978). And "a court may decline to hear a claim for declaratory

relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties." *Philips Med. Cap., LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007).

Here, Plaintiff's claim for declaratory relief does not seek to address any ongoing controversy; instead, it seeks a declaration about a decision that, as the complaint establishes, has already been made. And, even if there was still some ongoing controversy regarding whether Plaintiff committed fraud with respect to Customers 1 and 2, resolution of Plaintiff's other claims will necessarily resolve that question as well. That is because Plaintiff's claims turn on whether BANA wrongfully determined that Plaintiff had committed fraud and closed its account. Accordingly, in resolving Plaintiff's other claims, the sole question at issue in Plaintiff's claim for declaratory relief will be answered. Accordingly, this claim is duplicative of Plaintiff's other claims and should be dismissed.

**CONCLUSION**

For the foregoing reasons, Plaintiff's complaint should be dismissed in its entirety.

DATED: June 27, 2025 MCGUIREWOODS LLP

By: */s/ Elizabeth Zwickert Timmermans*
ELIZABETH ZWICKERT TIMMERMANS

*Attorneys for Defendant*
*Bank of America, N.A.*